# Foulke's Estate—Stroud's Appeal.

A testatrix gave to her niece, Mary, the interest of $3500 for life; if Mary left issue then to the issue, if she left no issue then to the children of testatrix's brother John. She gave a like legacy to her niece Eleanor in the same manner. In case her nephew Richard, a child of her brother John, died before her nieces Mary and Eleanor, and the nieces should die leaving no issue, the $7000 left to the nieces to go to the issue of Richard. Mary died unmarried, leaving Richard and Eleanor surviving. *Held,* that upon the death of Mary, the $7000 was to be divided between Richard and Eleanor.

APPEAL from the Orphans' Court of *Philadelphia.*

Elizabeth Foulke died in October 1820, having by her will, dated May 17th 1815, amongst other things, given as follows:—

" Item. I give to my niece, Mary Foulke, the interest of $3500 during her natural life, and in case of her marriage, to be for her sole and separate use, and her receipt to be a sufficient discharge, and if she leave issue, then I give the said $3500 to them, but if she leave no issue, then I give the said $3500 to the survivors or survivor of the children of my brother, John Foulke.

" Item. I give to my niece, Eleanor Foulke, the interest of $3500 during her natural life, and in case of her marriage, to be for her sole and separate use, and her receipt to be a sufficient discharge, and if she leave issue, then I give the said $3500 to them, but if she leave no issue, then I give the said $3500 to the survivors or survivor of the children of my brother, John Foulke, and in order to preserve the contingent remainders, what I have

[Foulke's Estate.]

given to my nieces, Mary and Eleanor Foulke, I do hereby vest in my executors and their assigns, for the several purposes herein mentioned, specially enjoining that the same be placed at interest, and kept out on good, real security. The interest to be made payable half-yearly.

"Item. I give to my nephew, Richard Foulke, $3500, payable to him in one month after my decease.

"Item. In case my nephew, Richard Foulke, should die before my nieces, Mary and Eleanor Foulke, and they my said nieces should die leaving no issue, then I will and direct, if there be issue of my said nephew, Richard Foulke, living, the said $7000 herein given to my said nieces, shall be divided equally between them."

\*          \*          \*          \*          .\*          \*          \*

"I give to my executors in trust $1000, to be placed at interest on good, real security, in half-yearly payments, the interest thereof to be paid by them to my nephew, Richard Foulke, and at his decease to be paid to my nieces, Mary and Eleanor Foulke, each to receive $500, but in case of their death, to go to the children of my nephew, Richard Foulke, if any such be living."

At the time of her decease Richard Foulke was married and had children. Mary and Eleanor Foulke were not then married. These three were the only children of the testatrix's brother, John Foulke, and were her heirs and next of kin to whom her estate would have gone had she left no will. They all survived her. Subsequently Eleanor Foulke married B. B. Long, and by a deed of marriage settlement previous to her marriage, conveyed all her property, real and personal, upon certain trusts, of which William S. Vaux is now trustee.

Mary Foulke died unmarried and without issue on the 15th day of December, A. D. 1855.

Richard Foulke died on the 22d day of August 1860, leaving a will, of which George M. Stroud is executor. He left three children, viz.: 1. Elizabeth, intermarried with P. Beirne : she has since died, leaving one child, Richard A. Beirne, a minor. 2. William Parker Foulke, who died in June 1865, leaving a will, of which George M. Stroud, Julia De Veaux Foulke and Lewis D. Vail are the executors. 3. Francis E. Foulke, who is of full age.

Joel Cadbury, the survivor of the trustees appointed by the Orphans' Court to hold the three legacies of Mary, Eleanor and Richard, filed his trust account, which was referred to George Junkin, Esq., as auditor. This report being referred to in the opinion of the Supreme Court, as containing a proper interpretation of the will, the following part of it is given:—

"Three questions arise in these trusts under the will and this state of facts.

[Foulke's Estate.]

" First. When Mary Foulke died leaving no issue, what disposition did the will make of the principal of her trust?

" The second question is, When Richard Foulke died leaving issue, and having survived his sister Mary, what disposition did the will make of the principal of his trusts?

" The third question is, What disposition is to be made of the principal of Eleanor Long's trust, she having survived both her brother and sister?

" 1st. As to Mary Foulke's trust.

" Were this question to depend solely upon the third item of the will, which creates the trust, there would be no difficulty in reaching a satisfactory conclusion. The principal of the trust by it is given to the survivors of John Foulke's children in the·event which occurred, viz.: the death of Mary Foulke without issue. These surviving children were Richard Foulke and Eleanor Long. But the sixth item (already quoted) creates a difficulty in the case. Mr. Clay insisted that the provisions of this item had no application, because Richard Foulke had *not* died *before* Mary *and* Eleanor Foulke, but only before one of them. Mr. Vail contended that the word ' *and* ' should be read ' *or*,' so that if Richard died before *either* Mary or Eleanor, the provisions of this item did apply; that the whole will showed the testatrix's desire to keep the principal of the trust set apart for her two nieces during their lives, in the family; and that in order to effectuate this intention, it was necessary to read the copulative as a disjunctive conjunction.

" It is unquestionably true that the plain ordinary reading of the words of this clause, requires the death of Richard Foulke to occur before *both* of his sisters, in order to allow it to alter the previous provisions of the will in the event that occurred. It is equally true that the law constantly construes ' *and* ' for ' *or*,' and ' *or* ' for ' *and*,' in cases where it is necessary so to do in order to carry out the intent of the testator. But this intent 'must be made to appear: 2 Roper on Legacies 1405†, 1410†; 2 Wills on Executors 932*. It must be to effectuate a clear intention.

" What did the testatrix intend? In order to arrive at a satisfactory conclusion, we must place ourselves as we would have been immediately upon Mary's death. Then under the third item creating the trust, Richard and Eleanor, being the surviving children of John Foulke, would be entitled to the principal in equal parts. But it is contended that the sixth item prevents this; and snatching the principal from Richard and Eleanor gives it to his issue. If so, *when* are this issue to take? Certainly, not at once, for Richard still living may have more children; so that the principal must be invested, and the income must accumulate until Richard's death, for *then only* can the number of the issue be known, and there is nothing in the will to authorize the pay-

[Foulke's Estate.]

ment of the interest meanwhile to Richard and Eleanor. No such intent as this appears in the will.

"Moreover, this would make the testatrix discriminate not only against the surviving niece, but also against Richard, in order to favour his unknown issue. Had this clause not been inserted, then, upon the event which occurred, Richard would have received one half of Mary's trust estate, and Eleanor the other half; but Mary happening to die before him, he gets none of it, and all of the trust goes to Richard's heirs, and *his* only chance of getting any of either of his sister's trusts is his surviving them both. This surely is not the meaning of the will. Again, had the third and fourth items alone been in the will, then Richard surviving one of his sisters, and she dying without issue, he would get one-half of her trust, and also surviving the other, likewise dying without issue, he would get the whole of her trust, or $5250 in all. But, thought the testatrix, he may die before either of his sisters, and then no part of this $7000 will reach his children; and for this contingency she provides, by saying in the sixth clause that the whole of the $7000 should go to his issue, as Mary and Eleanor, or both should respectively die without issue. This would make the testatrix discriminate in favour of Richard's issue, and against Mary and Eleanor, in the event of either of them dying after him without issue, and then the issue of Richard being ascertained and fixed by reason of his previous death, would at once take the share of their aunt so dying, and when the surviving aunt died without issue, they would also take the principal of her trust.

"It is submitted that this interpretation meets every conceivable contingency, and is not contrary to the spirit of the will.

"But let us take another view. The testatrix in looking back over what she had written (for the original is all in her own handwriting), saw that in the third and fourth items creating the trusts for her nieces, she had provided for the following contingencies, viz.: First, The death of one of the sisters without issue, and Richard surviving, he and the surviving sister would take the principal of the deceased sister's trust in equal parts. Second, The death of both sisters without issue, Richard surviving, he would then take the whole of the last surviving sister's trust. Third, The death of Richard before either sister, and then the death of one of the sisters without issue; the surviving sister taking the whole of her sister's trust, there remained but one other possible contingency, and for this no provision had thus far been made. Fourth, The death of Richard *before* the surviving sister, and she dying without issue, and to meet this possibility, made the provision in the sixth item, if Richard died before his sisters, his issue should take the surviving sister's share in the event of her leaving no issue. It is true that this intent could

[Foulke's Estate.]

have been expressed in more explicit language than that used in the will; but it is submitted that this is what she meant to provide, and that this is a more reasonable interpretation than to say, that she meant that upon the contingency of Richard's dying before either or both of his sisters, neither he or either of his sisters should have any of the principal of these trusts. In the opinion of the auditor, upon the death of Mary Foulke without issue, the principal became divisible between Richard Foulke and Eleanor Long in equal parts."

After exception by the appellant, the Orphans' Court confirmed the report. This was assigned for error.

*Lewis D. Vail*, for appellant.—Mary's legacy should remain in the hands of the trustee until Eleanor's death. Eleanor and the estate of W. P. Foulke each receiving one-half the interest. This was the intention of the testatrix, which overrides mere technical and grammatical rules of construction: Findlay v. Riddle, 3 Binn. 149; Sorsby v. Vance, 36 Miss. 564; Rose v. McHose's Executors, 26 Mo. (Jones). This construction would be carried out by reading " or " instead of " and." Such change may be made to carry out the intention of the testator: Wilson v. Bayley, 3 Bro. P. C. 195; Hepworth v. Taylor, 1 Cox 112; Maberly v. Strode, 3 Ves. 450; Bell v. Phyn, 7 Id. 450; McKeryre v. King, 12 Jur. 787.

*J. A. Clay*, for appellee.—Where a legacy is given on two contingencies, both must happen to enable the legatee to take: Cheeseman v. Wilt, 1 Yeates 411. " And" is to be read " or " or *vice versâ*, only in cases of plain mistake or to effectuate a clear intent: Holmes v. Holmes, 5 Binn. 252; Griffith v. Woodward, 1 Yeates 316; 1 Jarman on Wills 432. There is no evident intent to prefer the children of Richard, who were grand-nephews, to her niece, being one degree nearer of kin.

The opinion of the court was delivered, March 26th 1866, by

READ, J.—Under the will of Elizabeth Foulke, if Mary Foulke her niece died without issue, the sum of $3500, of which the interest had been given to her during her natural life, went to the surviving brother and sister of the said Mary. Mary died without issue, leaving her brother Richard and her sister Eleanor her survivors. But by the terms of the will this sum passed to them as tenants in common. By the will a similar sum in the same form had been given to Eleanor, and the sixth item of the will was in these words: " Item. In case my nephew, Richard Foulke, should die before my nieces Mary and Eleanor Foulke, and they my said nieces should die leaving no issue, then I will and direct, if there be issue of my nephew Richard Foulke living, that the

[Foulke's Estate.]

said $7000 herein given to my said nieces shall be divided equally between them." This clause never came into operation, because Richard died after Mary but before Eleanor, who is still living and married. The will, therefore, as to Mary's $3500, is to be read as if the sixth item or clause were not in it. The whole will and its meaning have been so ably discussed in the auditor's report, that it is unnecessary to enter into more detail of our reasons.

Decree affirmed.